UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA



FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2008 APR -9  P 2:18

SIGN
BY DEPUTY CLERK

THALIA STEVENSON

VERSUS

ANN WILLIAMSON, INDIVIDUALLY
AND IN HER OFFICIAL CAPACITY, AND
THE STATE OF LOUISIANA, THROUGH
THE DEPARTMENT OF SOCIAL SERVICES

CIVIL ACTION

NO. 06-418-JVP-CN

**PUBLISH**

# RULING ON MOTION
# FOR SUMMARY JUDGMENT

This matter is before the court on a motion for summary judgment by defendants, Ann Williamson ("Williamson"), individually and in her official capacity as Secretary of the Louisiana Department of Social Services, and the State of Louisiana, through the Department of Social Services (doc. 17). Accompanying the motion are defendants' memorandum in support (doc. 17-3), statement of uncontested facts (doc. 22), and exhibits (doc. 17, Exs. 1-9). Plaintiff, Thalia Stevenson ("Stevenson") has filed a memorandum in opposition to the motion (doc. 25), an opposition to defendants' statement of uncontested facts (doc. 22) and exhibits (doc. 21, Exs. A-I). Defendants have replied to plaintiff's opposition (doc. 26). Jurisdiction is based on 28 U.S.C. § 1331 and 28 U.S.C. 1367. The matter is now submitted and there is no need for oral argument.

## FACTS AND PROCEDURAL HISTORY

On May 12, 2006, plaintiff, Stevenson, filed this action in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana,[1] naming as defendant, Williamson, both in her individual capacity and in her official capacity as Secretary of the Louisiana Department of Social Services ("DSS"). The original state petition alleges that Stevenson, while employed as director of the Bureau of Licensing within the DSS, became aware that the department secretary, Williamson, improperly back-dated and issued certificates to facilities that were not in compliance with either federal or state law. The petition further alleges that plaintiff refused to participate in what she considered an illegal activity, and "[f]ollowing the death of a resident in one such facility, Petitioner advised investigators of the improper conduct on the part of defendant, Williamson."[2]   (doc. 1, p. 7, ¶¶ 1-4).

Stevenson alleges that she was subsequently suspended with pay, denied a merit wage increase, and demoted from her position as director because of her refusal to remain quiet regarding the allegedly illegal activities within the DSS. Stevenson further contends that the denial of a merit wage increase constituted an adverse and/or tangible employment action on account of her whistle-blowing activity

---

[1]For not the first time and what is likely not the last time, the undersigned expresses amazement that a high ranking official of the State of Louisiana should remove an action against Louisiana from Louisiana's own courts. (*See* Notice of Removal, doc. 1).

[2]During her deposition of August 27, 2007, Stevenson stated that the death to which the petition refers occurred in an unrelated, unlicensed facility.  She also stated that no deaths occurred in facilities which allegedly had licenses reissued and back-dated.  (doc. 21, Ex. A, pp. 85-88).

and that the said actions constituted retaliation under 42 U.S.C. § 1983 and reprisal under La. R.S. 23:967.  Specifically, plaintiff alleges that the actions taken by her employer violated her right to freedom of speech under the 1st Amendment to the U.S. Constitution and her right to her reputation, good name, and public employment under the 14th Amendment to the U.S. Constitution.  (doc. 1, pp. 7-8, ¶¶ 5-9).

Stevenson's petition alleges that she sustained damages including embarrassment, humiliation, loss of reputation, loss of job and opportunities for promotion/advancement, loss of wages and benefits, mental anguish, emotional distress and all such other damages as will be shown at trial.  The petition prays for attorneys fees as provided by both federal and state law and alleges that the acts of defendant, Williamson, were in wanton and reckless disregard of plaintiff's clearly established rights and therefore prays for punitive damages.  The petition further prays for all costs of the proceedings, with legal interest, and for all other relief to which she is entitled under law and equity.  (doc. 1, pp. 8-9, ¶¶ 10-14).

As noted *supra*, the lawsuit was removed to this Court on June 14, 2006 (doc. 1) by defendant, the Secretary.  Plaintiff subsequently  filed a supplemental and amending complaint on October 12, 2006, adding the state of Louisiana, through the Department of Social Services as a defendant.  The supplemental and amending complaint alleges that, in the spring of 2005, Stevenson protested the failure of defendants to promote black persons on a consistent basis and that she was suspended as a result of this protest. Stevenson also alleges that she protested her

3

suspension, reporting that it was due to her race, black, and thereafter she was demoted, denied a pay raise, given an unfair performance appraisal and replaced by a less qualified, white female.  Stevenson therefore contends that she has been retaliated against, subjected to reprisal and subjected to discrimination on the basis of her race.  (doc. 8, ¶ II).

The supplemental and amending complaint further alleges that Stevenson timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Louisiana Commission on Human Rights, after which the DSS transferred her in an act that amounted to a demotion and constituted illegal retaliation and/or reprisal and ongoing discrimination on account of her race.[3]  (doc. 8, ¶¶ III-IV).

The current motion for summary judgment was filed by defendants on December 31, 2007.  Defendants, in their statement of material facts not in dispute, set forth the following facts that they claim are material to the motion now before the court, as required by Local Rule 56.1.  The material responses of plaintiff, required by Uniform Local Rule 56.2, are noted in footnotes where appropriate.[4]

---

[3]Exhibits on file show that the Charge of Discrimination was filed on August 23, 2006 and cites discrimination based on race and retaliation between the dates of April 27, 2005 and June 30, 2006 (doc. 21. Ex. F, p. 4).  The Statutory Notice of Right to Sue was issued on September 27, 2006 (*Id.* at 9).  Therefore, plaintiff has met the conditions precedent for filing a claim under Title VII of the Civil Rights Act of 1964 in federal district court and timely filed her claim in the supplemental and amending complaint on October 12, 2006.

[4]Uniform Local Rule 56.2 provides the opportunity for a plaintiff to *concisely* address each statement of fact that a defendant contends is not in dispute.  Local Rule 56.2 provides:

1.   Thalia Stevenson was a permanently classified civil service employee at all times pertinent with the Louisiana Department of Social Services.

2.   Defendant received an anonymous letter in April of 2005 purporting to criticize the operations of the Bureau of Licensing and its director, Thalia Stevenson, and employees she supervised.[5]

3.   The letter referred to above purported to be from a staff member or members within the Bureau of Licensing.[6]

4.   Thalia Stevenson was unaware of the existence of this letter until after suit herein was filed.

5.   A part of Thalia Stevenson's job duties entailed participating in the decision to issue or not issue licenses for residential facilities for adults and children.[7]

6.   Thalia Stevenson is still employed by the Department of Social Services.

7.   An investigation into the operations of the Bureau of Licensing was initiated pursuant to the receipt of the letter of complaint received in May of 2005.[8]

---

Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

[5]Plaintiff denies this statement of fact, alleging that no such letter was ever shown or discussed with Ms. Stevenson and contending that under DSS policy, no such letter can serve as the basis for an investigation or grievance (doc. 22, p. 2).

[6]Plaintiff denies this statement of fact, and states that "[t]he 'letter' was 'anonymous' and no efforts were undertaken by anyone affiliated with DSS to find out who authored same and their motivations for so doing" (doc. 22. p. 2).

[7]Plaintiff denies this statement of fact and contends that Stevenson and DSS had no discretion in the issuance of licenses, noting that La. R.S. 46:1409 mandates that facilities must meet minimum standards set forth in LAC 48:1, Chapter 79, §§ 7901-7923 in order to be issued full licenses (doc. 22, p. 3). Plaintiff's statement is, of course, her conclusion of law, not fact.

[8]Plaintiff denies this statement of fact and refers to her comments as stated in *supra* notes 2-3 (doc. 22, p. 3).

8.     Thalia Stevenson was placed on paid administrative leave for two consecutive 30 day terms beginning in May of 2005.[9]

9.     Following a period of 60 days of paid administrative leave allowed by the Civil Service Commission, Thalia Stevenson worked at the direction of the defendants compiling a policies and procedures manual until Hurricane Katrina struck in August of 2005.[10]

10.    In the aftermath of Katrina, plaintiff was assigned duties in Lake Charles assisting victims of the storm to apply for assistance whereupon, at her request, she was allowed to return to Baton Rouge.[11]

11.    In February of 2007, Thalia Stevenson was reassigned to a position as a Program Manager 2 within the Office of Family Support, Department of Social Services, at a civil service pay level the same as that of her prior position as Director of Licensing, Department of Social Services.[12]

12.    Plaintiff has not suffered any present economic loss as a result of the reassignment of her duties.[13]

13.    Thalia Stevenson did not voice, to anyone outside of her staff and staff counsel, any concerns regarding the issuance of corrected or replacement licenses to those facilities under scrutiny of the Federal Administration for Children and Families audit.[14]

---

[9]Plaintiff offers a general denial of this statement of fact, but fails to make any relevant comment regarding her ground for denial (doc. 22, p. 3).

[10]Plaintiff again offers a general denial of this statement of fact without making any relevant comment regarding her ground for denial (doc. 22, p. 4).

[11]Plaintiff does not deny that she was sent to Lake Charles, but denies that she was given any duties to perform there (doc. 22, p. 4).

[12]Plaintiff offers a general denial of this statement of fact, but the only comment made which is otherwise relevant to the defendants' statement of fact is plaintiff's admission that she retains the same pay-grade (doc. 22, p. 4).

[13]Plaintiff offers another general denial and cites her response to the previous statement of fact. The only comment in that response however that is relative to this statement of fact is an admission that plaintiff maintained her pay-grade.  (doc. 22, p. 4).

[14]Plaintiff denies this statement of fact and states that she specifically noted her objections verbally, in writing, in the public records of the State of Louisiana, and the media (doc. 22, p. 4). She offers no specifics of any such statements, however.

14.     The position of Director of the Bureau of Licensing was not filled following Ms. Stevenson's reassignment, to date.[15]

15.     Thalia Stevenson was granted a merit raise increase in March of 2006.[16]

(doc. 17-2).

## LAW AND DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor.  *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997).  After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986).

The plaintiff, in an employment discrimination case, bears the burden of proving that she has been the victim of intentional discrimination.  *St. Mary's Honor*

---

[15]Plaintiff denies this statement of facts and contends that the Department of Social Services Human Resources Director, Mike Gamble, stated that Lora Corraccio "replaced Ms. Stevenson, as well as Mrs. Haney, Ms. Alexander, and Ms. Stevenson" (doc. 22, p. 4).

[16]Plaintiff denies this statement "as written", contending that the merit increase was originally denied and thus delayed for over six months (doc. 22, p. 5).

*Center v. Hicks*, 509 U.S. 502, 508, 113 S.Ct. 2742, 2747-78, 125 L.Ed.2d 407 (1993).  The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex Corp. V. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Louisiana Courts look to federal Title VII jurisprudence to interpret Louisiana discrimination laws.  *King v. Phelps Dunbar, L.L.P.*, 743 So.2d 181, 187 (La.1999) (citing *Bustamento v. Tucker*, 607 So.2d 532, 538, n. 6 (La.1992)); *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir. 2004).  Therefore, the federal analysis applicable to plaintiff's Title VII claim also governs plaintiff's state law claims under La. R.S. 23:967.  Likewise, employment discrimination claims brought pursuant to 42 U.S.C. § 1983 are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e *et seq. Lawrence v. University of Texas Medical Center at Galveston*, 163 F.3d 309, 312 (5th Cir. 1999); *Tanik v. Southern Methodist University*, 116 F.3d 775, 775 (5th Cir. 1997); *Givs v. City of Eunice*, 512 F.Supp 522, 542 (W.D.La. 2007).  Therefore, the federal analysis applicable to plaintiff's Title VII claims also governs plaintiff's state claims and her federal claims under Section 1983.

8

**Claims of Racial Discrimination**

> To survive summary judgment on a claim of unlawful racial discrimination in employment, a plaintiff must prove, at least that there is a genuine dispute of material fact concerning his *prima facie* case. If the employer comes forward with a legitimate, non-discriminatory reason for its employment action, the plaintiff must point to disputed facts from which a reasonable factfinder could conclude either that the alternative reason is a pretext or that it was only one of multiple reasons for defendant's conduct, another of which was racial animus.

*Culwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006) (citing *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005)).

"To establish a *prima facie* case of discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) that she was qualified for the position; (3) she suffered an adverse employment action; and (4) after she was discharged, she was replaced with a person who is not a member of the protected class." *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003); *Okoye v. Univ. of Texas Health Science Center*, 245 F.3d 507, 512, 13 (5th Cir. 2001). A plaintiff may also satisfy the fourth prong if she can show that she was treated differently than others who were similarly situated. *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 941 (5th Cir. 2005); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

In the present case Stevenson has satisfied the first two prongs of the prima facie case in that she is black and is qualified for the position.[17] Defendants,

---

[17]Defendants have not disputed that plaintiff has the education, training and experience required to perform the job of director.

however, argue that Stevenson did not suffer an adverse employment action and note that she is still employed by the Louisiana Department of Social Services and has admitted that she has lost no money because of her transfer from the Bureau of Licensing (doc. 17-3, pp. 17-18); (doc. 17, Ex. 1, p. 23)).  Defendants also argue that Stevenson has not been replaced by anyone because the position of Director of the Bureau of Licensing has not been filled since her removal (doc. 26, p. 4); (doc. 17, E. 2, p. 7).

This court need not be concerned with whether Stevenson has established a prima facie case of racial discrimination as defendants argue, that plaintiff cannot show that the defendants' reasons for the challenged employment decisions were pretext.  In the present case, assuming without deciding that plaintiff has established a prima facie case, the court notes that defendants have proffered legitimate nondiscriminatory reasons for the decisions.  Defendants contend that the decisions were made because plaintiff's job performance was inadequate and the Bureau of Licensing was experiencing morale problems and its staff complained of poor working conditions (doc. 26, p. 4).

Those contentions are supported by evidence in the record.  Mike Gamble, a human resources manager with the Department of Social Services, stated in his deposition that he attended interviews of all the employees of the Bureau of Licensing.  Mr. Gamble further stated that morale was low, most employees felt that they were treated unfairly and most of the employees said they did not receive the

respect they needed from their supervisor, Pat Alexander. According to Mr. Gamble, "[t]hey felt like Patty [Alexander] was really running the department." (doc. 17, Ex. 3, pp. 25, 32).

Secretary Williamson, who made the actual decisions challenged by Stevenson, stated in her deposition that Stevenson was put on administrative suspension so that the Department of Social Services could investigate the operations of the licensing bureau. She states that the allegations were brought to her attention through an anonymous letter as well as through previous complaints. Williamson stated that among the complaints were allegations that that the bureau lacked: 1) effective leadership; 2) team development; 3) solution-oriented problem solving; 4) motivation; 5) respect; 6) cooperation with other operations in the department; and 7) responsiveness to staff requests. She also stated that the allegations included a concern about retaliation and favoritism. (doc. 17, Ex. 2, pp. 57-59).

Because defendants have stated clear and reasonably specific reasons for their actions, the burden shifts to the plaintiff, Stevenson, to point to facts from which a reasonable factfinder could conclude either that the reasons given by defendants are a pretext or that they were only some of the reasons for defendant's conduct, another of which was racial animus. See *Culwell*, 468 F.3d at 873; *Keelan*, 407 F.3d at 341.

11

Plaintiff has proffered no evidence from which a reasonable juror could conclude that the employment decisions were motivated in any way by racial discrimination. At her deposition, plaintiff was asked "at what point . . . did race play a part in Ann [Williamson]'s decisions and the way she handled you?" Plaintiff responded by saying "I don't know. I can't answer that." She then continued, "[o]ther than to say it happened." (doc. 17, Ex. 1, p. 103).

When asked why she thought the suspension had anything to do with race, plaintiff ultimately responded, by saying "[w]ell, I'm saying I think [Williamson] didn't like it because I'm a black person and I stood up to her about some of the decisions she wanted me to make. Whereas with the other individuals, she was able to get Angie to do whatever she wanted or Laura to do what she wanted."[18] (doc. 17, Ex. 3, pp. 100-01).

A plaintiff's subjective belief that defendants discriminated against her on the basis of race and national origin is insufficient to create a genuine issue of fact where the defendants have come forward with a legitimate, non-discriminatory reason for their employment action. See *Hornsby v. Conoco, Inc.*, 777 F.2d 243 (5th Cir. 1985) (holding that generalized testimony by an employee regarding his subjective belief that his discharge was the result of age discrimination is insufficient

---

[18]Angie Rollins and Laura Carroccio are both white and plaintiff contends that she was treated differently than they were. Plaintiff's testimony however provides no reason to conclude that race had anything to do with this difference in treatment. To the contrary, it supports a finding that they were treated differently because of the way they responded to Williamson's authority.

12

to make an issue for the jury in the face of proof showing an adequate non-discriminatory reason for the discharge); *Elliot v. Group Medical & Surgical Service*, 714 F.2d 556, 564 (5th Cir. 1983, *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d (1984) (same).

After viewing the facts presented in the light most favorable to the non-movant and drawing all reasonable inferences in her favor, the court concludes that plaintiff has failed to set forth facts from which a reasonable fact finder could conclude that defendants intentionally discriminated against Stevenson on the basis of race. Therefore, Stevenson has failed to meet her burden of demonstrating a genuine issue of fact essential to her claims of racial discrimination under either Louisiana or federal law.[19]

## Claim of Retaliation under Title VII

Stevenson also alleges that she was suspended, denied a pay raise and transferred from her post as director of the Bureau of Licensing.  She contends that these amounted to acts of retaliation by defendant because Stevenson: 1) had previously protested the Department of Social Services' alleged failure to consistently promote black persons; and 2) advised investigators that the Secretary of the Louisiana Department of Social Services, Ann Williamson, back-dated full licenses for facilities that were allegedly not in compliance with state or federal law.

---

[19]See *St. Mary's Honor Center*, 509 U.S. at 508 (holding that a plaintiff in an employment discrimination case bears the burden of proving she has been the victim of intentional discrimination).

To establish a *prima facie* case of unlawful retaliation under Title VII, plaintiff must show: 1) that she engaged in an activity protected by Title VII; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse employment action.  *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).

As to the first prong of the *prima facie* case, Stevenson filed her Charges of Discrimination with the Equal Employment Service Commission and the Louisiana Commission on Human Rights on December 28, 2005 (doc. 21, Ex. E, pp. 11-12).[20] Thus, she engaged in an activity protected by Title VII.

As to the second prong, Stevenson was suspended.[21]  She was also transferred  out of the Bureau of Licensing and reassigned to a position in another department. Regarding the third allegation, however, Stevenson admits that defendant, Williamson gave her a merit wage increase prior to the dismissal of her appeal by the Louisiana Civil Services Commission (doc. 21, Ex. A, p. 78).

---

[20]Plaintiff also states that, in Spring of 2005, she protested the failure of Williamson and the state to promote black people on a consistent basis (doc. 21, Ex. A, p. 113). She also stated that, during her administrative leave, she called the "civil service" about blacks not being promoted (doc. 21, Ex. A, p. 114-15).  Plaintiff, however, has presented no evidence that defendants were ever made aware of this complaint prior to service of the petition.  Therefore, the court will not address the issue further in its analysis of this claim of retaliation.

[21]Claims of retaliation, unlike other claims made pursuant to Title VII, are not limited to employer's actions that affect terms, conditions or status of employment.  To support a claim of retaliation, the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern and Santa Fe Railway. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2409, 165 L.Ed.2d 345 (2006).

14

Stevenson has also submitted a letter from the Civil Service Commission, which states that the appeal was dismissed as of July 12, 2006 (doc. 21, Ex. E). Therefore, though the merit wage increase was granted, it appears to have been delayed a few months past December.

The third prong requires a plaintiff to show a causal link between the activity protected by Title VII and the adverse employment action. To establish the causation element of a retaliation claim under Title VII, a plaintiff must present either direct evidence of retaliation or circumstantial evidence creating a rebuttable presumption of retaliation. *Washburn*, 504 F.3d at 510. Stevenson presents no direct evidence of retaliation sufficient to defeat summary judgment. Therefore, the question becomes whether circumstantial evidence exists to create a rebuttable inference of retaliation.

No causal link can exist where, as here, a claimed adverse employment action occurred prior to the protected activity. Because Stevenson engaged in the protected activity on December 28, 2005, only employment actions that occurred after that time can be implicated by the retaliation provision of Title VII. Therefore, no causal link can be shown between Stevenson's filing of charges with the Equal Employment Opportunity Commission and the Louisiana Human Rights Commission, and her suspension, which occurred on April 28, 2005.[22]

---

[22]The memorandum to Thalia Stevenson, notifying her of the suspension with pay, is dated April 27, 2005, and states that the suspension took effect upon receipt (doc. 17, Ex. 7). Plaintiff stated that she received the memorandum at approximately 4:30 p.m. on that same date (doc. 21,

15

The court also notes that the petition alleges that Stevenson was "demoted from her position as Director and reassigned" on December 8, 2005– also prior to the protected activity (doc. 1, p. 7, ¶ 5). Defendant's Statement of Material Facts Not in Dispute, however, states that plaintiff was reassigned in February of 2007 to a position of Program Manager 2 within the Office of Family Support, Department of Social Services, with the same civil service pay level as that of her prior position as Director of Licensing (doc. 17-2, p. 2, No. 11). Plaintiff, however, denies that statement of fact in her Opposition to Defendant's Statement of Uncontested Facts and makes no other relevant comment regarding the statement except to admit that the pay grade was the same (doc 22, p. 4, No. 11). Pursuant to Uniform Local Rule 56.2, therefore, the court cannot accept the statement as undisputed fact for purposes of this motion for summary judgment. Finding no circumstantial evidence from which the date of the reassignment can be established, the court moves to the final allegation.[23]

---

Ex. A, pp. 63-64). The department's request to extend the suspension also noted that the original suspension began on April 28, 2005 (doc. 21, Ex. E, Att. 4).

[23]Even if the record supported a finding that plaintiff was reassigned in February, it would merely create a potential inference that the defendants' action was retaliatory. The plaintiff would still bear the burden of showing that the reassignment was an adverse employment decision under the holding of the Supreme Court in *Burlington Northern*, 548 U.S. 53. Such an inference, standing alone, would be unlikely to survive summary judgment where the defendants articulate a legitimate, non-retaliatory reason for their action. See *Strong v. University HealthCare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (holding that temporal proximity alone is insufficient to prove but for causation in a claim of retaliation); *Hornsby v. Conoco, Inc.*, 777 F.2d 243 (5th Cir. 1985) (holding that generalized testimony by an employee regarding his subjective belief that his discharge was the result of age discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate non-discriminatory reason for the discharge); *Elliot v. Group Medical & Surgical Service*, 714 F.2d 556, 564 (5th Cir. 1983, *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658,

Plaintiff has demonstrated a temporal relationship between the protected activity and Williamson's delay in granting a merit wage increase to plaintiff. Plaintiff, however, has not put forth any other evidence to support her contention that this delay in her receiving a merit wage increase was, in fact, retaliation for her act of filing the charges. Temporal proximity alone, when very close, can in some cases establish a *prima facie* case of retaliation. *Strong*, 482 F.3d at 808 (citing *Clark County School Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 506 (2001).

In the present case, however, this temporal relationship is insufficient to establish a *prima facie* case of retaliation. The court notes that the Louisiana Department of Social Services, at the time in question, was dealing with the after-effects of Hurricane Katrina. The Louisiana Department of State Civil Service issued General Circular No. 001618 on September 6, 2005, noting that many agencies were unable to perform timely ratings of employees in the wake of Hurricane Katrina. The circular further stated that, in light of the compelling circumstances created by Hurricane Katrina, all Performance, Planning and Review documents that were due between August 27, 2005 and February 28, 2006 would be considered timely if completed by the close of the day on February 28, 2006. (doc. 21, Ex. E, Att. 1).[24]

---

81 L.Ed.2d (1984) (same).

[24]The court also notes that Mike Gamble, a Department of Social Services Human Resource Manager, stated that merit wage increases are not automatic, but are dependant upon the Performance, Planning and Review results (doc. 21, Ex. I, p. 51). Thus, according to his uncontroverted statement, no merit wage increase could be granted until after the Performance,

Therefore, the court concludes that plaintiff has failed to establish a *prima facie* case of retaliation under Title VII of the Civil Rights Act of 1964.

**The Louisiana Whistleblower Statute**

Defendants contend that this court lacks subject matter jurisdiction over the state law claims asserted by plaintiff because the claims fall within the exclusive jurisdiction of the State Civil Service Commission.  They argue that the Nineteenth Judicial District Court, Parish of East Baton Rouge therefore lacked subject matter jurisdiction over the state claims at the time the claims were removed to federal court.  They conclude that, as a result, subject matter jurisdiction is absent. (doc. 17-3, pp. 7-11).

Article 10, § 10 of the Louisiana Constitution of 1974 provides that the Louisiana Civil Service Commission is vested with broad rulemaking and subpoena powers for the administration and regulation of the classified service.

Article 10, § 12(A) of the Louisiana Constitution of 1974 provides in pertinent part:

> The State Civil Service Commission shall have the exclusive power and authority to hear and decide all removal and disciplinary cases with subpoena power and power to administer oaths.
> * * *
> If an application for review is timely filed with the commission and, after a review of the application by the commission, the application is denied, the decision of the referee becomes the final decision of the commission as

---

Planning and Review procedure was completed.

18

of the date the application is denied.  The final decision of
the commission shall be subject to review on any question
of law or fact upon appeal to the court of appeal wherein
the commission is located, upon application filed with the
commission within thirty calender days after its decision
becomes final.

Because Article X, § 12(a) grants the Civil Service Commission the exclusive

power and authority to hear and decide all removal and disciplinary cases, Louisiana

district courts do not have jurisdiction over such employment related disputes as

reinstatement, back pay and merit increases asserted by classified civil service

employees against the state.  See e.g., *Goldsby v. State, Dept. of Corrections*, 861

So.2d 236, 238 (La.App. 1 Cir. 2003); see also, *Barenis v. Gerace*, 357 So.2d 892

(La.App. 1 Cir. 1986) (holding that the Civil Service Commission has exclusive

jurisdiction over the issue of whether a state employee was entitled to a promotion).

The Civil Service Commission however has no authority to provide general tort

damages.  *Simon v. Board of Commissioners of Port of New Orleans*, 875, So.2d

102, 106 (La.App. 4 Cir. 2004).  *Greenleaf v. DHH, Metropolitan Developmental

Center*, 594 So.2d 418 (La.App. 1 Cir. 1991) *writ denied,* 596 So.2d 102 (La.App. 4

Cir. 2004)).   Plaintiff in the present case claims damages for humiliation,

embarrassment, loss of reputation, opportunity for advancement/promotion, lost

wages and benefits, mental anguish and emotional distress.   Therefore, the

Nineteenth Judicial District Court, Parish of East Baton Rouge had subject matter

19

over the general tort claims at the time of removal.[25]  As a consequence, jurisdiction

is present in this court over the general tort claims based upon Louisiana R.S. 23:

967.  Concluding that jurisdiction is present, the court turns to Stevenson's claim of

reprisal under Louisiana law.

Whereas the protection against retaliation offered by Title VII is limited to

retaliation for acts otherwise protected by Title VII, the protection extended by

Louisiana's Whistleblower Statute, La. R.S. 23: 967, covers reprisal for actions not

specifically addressed by Title VII. The triggering events of a claim under La. R.S.

23: 967 are set forth in subsection A of the statute.  Louisiana Revised Statute 23:

967 provides in pertinent part:

> A.    An employer shall not take reprisal against an
> employee who in good faith, and after advising the
> employer of the violation of the law:
>
> (1) Discloses or threatens to disclose a workplace act or
> practice that is in violation of state law.
> (2) Provides information to or testifies before any public
> body conducting an investigation, hearing, or inquiry into
> any violation of law.
> (3) Objects to or refuses to participate in an employment
> act or practice that is in violation of law.
>
> B.  An employee may commence a civil action in a district
> court where the violation occurred against any employer
> who engages in a practice prohibited by Subsection A of
> this Section.  If the court finds the provisions of Subsection
> A of this Section have been violated, the plaintiff may

---

[25]The court notes that, under the holding of the court in *Goldsby*, this jurisdiction does not extend to issues such as the denial of a merit increase or back-pay.  861 So.2d at 238.

recover from the employer damages, reasonable attorney fees, and court costs.

C.  For the purposes of this Section, the following terms shall have the definitions ascribed below:

(1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.

In the present case, plaintiff alleges that defendants committed acts of reprisal because she "reported, protested, disclosed, threatened to disclose, and objected to the falsification of public records, issuance of a full license to a facility in violation of Louisiana law, and illegal racial discrimination" (doc. 21, pp. 16-17 .

For an employee to establish a claim under La. R.S. 23:967, she must prove that her employer committed an actual violation of state law. *Accardo v. Louisiana Health Services & Indem. Co.*, 943 So.2d 381 (La.App. 1 Cir. 2006); *Hale v. Touro Infirmary*, 885 So.2d 1210 (La.App. 4 Cir. 2004) *writ denied*, 896, So.2d 1036 (La.2005); *Puig v. Greater New Orleans Expressway Commission*, 772 So.2d 842 (La.App. 5 Cir. 2000), *writ denied*, 786 So.2d 731 (La.2001).  Therefore, Stevenson bears the burden of proving that defendants  falsified public records in violation of the law, or that the issuance of full licenses to the facilities in question was, in fact, a violation of public law, or that illegal racial discrimination actually occurred.

21

Stevenson has failed to establish that the Department of Social Services violated state law by refusing to promote black employees on a consistent basis. When asked to provide the factual basis for her allegation of racial discrimination regarding promotions, she mentioned that she had met three black people who claimed they were not promoted because of their race (doc 17, Ex. A, pp. 103-105). Stevenson, however, also stated that she didn't know if those people were actually denied promotions because of their race and presented no further evidence to support her allegation that the department and the state failed to promote black employees on a consistent basis (*Id.* at 105). Having failed to establish that the Department of Social Services and the State of Louisiana violated state law by failing to promote black employees on a consistent basis, plaintiff's complaint of racial discrimination cannot serve as the basis of reprisal under La. R.S. 23:967.

Plaintiff has also failed to establish that the issuance of full licenses violated state law. Defendants note that the file for the Cool Springs facility contains a note of Correction to File that states that the denial of a full license to the facility was in error as noted in the memorandum of Secretary Ann S. Williamson dated August 13, 2004.[26] The Note of Correction to File continues by stating that the Cool Springs facility met the minimum standards as evidenced by its last inspection and further

---

[26]Though Stevenson mentions three other facilities that she claims were improperly issued full licenses, the Cool Springs facility is the only one that she addresses in her argument.

22

states that a replacement license was being issued to reflect that status.  (doc. 17, Ex. 1, Att. 5).

The memorandum to which the Note of Correction to File refers states that the deficiencies initially listed involved reporting deficiencies, but states that the deficient records did not of themselves drop the facility below the substantial compliance threshold for licensure.  Moreover, the memorandum states that the facility had submitted evidence that it had corrected its reporting procedures and noted that the inspector had listed one of the deficiencies twice.  (doc. 17, Ex. 1, Att. 1).

Stevenson does not counter defendants' assertions except to say that, in her opinion, the deficiencies at the Cool Springs facility would not be "a paperwork fix" and to note that "remaining deficiencies" were found at the following inspection (doc. 21, Ex. A, pp 128-29, 133).[27]  Therefore, Stevenson has failed to state any illegal act by defendants in their re-issuance of licenses to the facilities in question or to direct the court to any significant evidence to support her allegation that the records of the four facilities were falsified.

The court concludes that Stevenson has failed raise a genuine issue of fact as to whether  defendants violated Louisiana law in their issuance of corrected licenses or in their employee promotion practices.  Therefore, plaintiff has failed to

---

[27]Though plaintiff refers to the deficiencies found at the following inspection as "remaining deficiencies" she does not provide the court with any evidence to support her allegation that these deficiencies remained from the previous inspection.

carry her burden of showing that a genuine issue of fact exists regarding an essential element of her claim of retaliation under Louisiana R.S. 23:967.

**Claims under 42 U.S.C. § 1983**

42 U.S.C. § 1983 provides in pertinent part :

> Every person who, under color of any statute ordinance, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Under the holding of the Supreme Court in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (U.S. 1989), neither a state, nor a state official in her official capacity, is a "person" under 42 U.S.C. § 1983.  See also *Stotter v. University of Texas at San Antonio*, 508 F.3d 812 (5th Cir. 2007). Therefore, in the present case, Anne Williamson, in her personal capacity, is the only defendant subject to suit under Section 1983.

Stevenson contends that her Section 1983 claim arises under the First Amendment.[28]  Specifically, she alleges that the defendant, Williamson, violated her First Amendment right to freedom of speech by retaliating against her for exercising her right to report, protest, and object to the allegedly illegal issuance of back-dated

---

[28]Stevenson also asserted a Section 1983 claim arising under the Fourteenth Amendment Equal Protection Clause, citing race-based discrimination (doc. 25, p. 25).  Because that claim has been previously addressed, the court needs not repeat the analysis here.

licenses and illegal race-based discrimination in her working environment.  (doc. 25, p. 25).

The First Amendment protects speech by public employees who speak not as employees upon matters of personal interest, but who speak as citizens upon matters of public concern.  *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Dorsett v. Board of Trustees for State Colleges & Universities*, 940 F.2d 121, 124, (5th Cir. 1991) (citing *Connick*, 461 U.S. at 147).  "'[T]he mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment . . . because almost anything that occurs within a public agency could be of concern to the public.'"  *Bradshaw v. Pittsburg Independent School District*, 207 F.3d 814, 817 (5th Cir. 2000) (quoting *Terrell v. University of Texas System Police*, 792 F.2d 1360, 1362 (5th Cir. 1986).  The court must "seek  a 'balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"  *Connick*. at 142 (quoting *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct 1731, 1734, 20 L.Ed.2d 811 (1968)).  "[T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs.  This includes the prerogative to

25

remove employees whose conduct hinders efficient operation and to do so with dispatch.  Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.'" *Connick*, at 151 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 168, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1974)).

In the present case Stevenson stated that, after her suspension, she told a reporter that " I thought I was suspended because I did not participate in the . . . falsification of some documents." However, she also stated that the reporter never called back and has not provided the court with any evidence that defendants were even aware of her conversation with the reporter.  (doc. 21, Ex. A, pp. 94-97).

Outside of that conversation, none of the speech at issue was made as a citizen speaking on matters of public concern.  All of the speech at issue was made either in a private form and context to her attorney, the Equal Employment Opportunity Commission or the Louisiana Human Rights Commission, or it was made in the context of her employment.   Communications with her attorney can in no way be considered public speech.  Her dialogue with the agencies were directly related to her personal employment claims against the state and were likewise not public speech.

Finally, plaintiff's refusal to participate in the re-issuance of the licenses was a simple refusal to act as requested by her supervisor.  Plaintiff's relevant statements, both verbal and by email, were directed toward her supervisor, her staff

and her employer, not the public.  As she stated in her deposition, she was concerned that her department might be made a scapegoat if the federal audit did not go well, so she let her advisor know that she "did not like that at all" (doc. 17, Ex. A, pp. 29-30).   Therefore, those comments were made in the context of her employment as the director of the Bureau of Licensing.

In light of the content, form, and context of the speech at issue, the court concludes that plaintiff's speech was not that of a private citizen commenting on matters of public concern so as to outweigh the interests of the State, as her employer, in promoting the efficiency of the public services it performs through its employees.   Plaintiff's speech, therefore, is not subject to First Amendment protection.

## CONCLUSION

For the foregoing reasons, the motion by defendants, Anne Williamson and the State of Louisiana, through the Department of Social Services (doc. 17) is hereby **GRANTED** and judgment shall be entered in favor of defendants, dismissing this action with prejudice.

Baton Rouge, Louisiana, April 9, 2008.

JOHN V. PARKER
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

27